IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

JAMIE T. BIRD,                          *
                                        *
        Plaintiff,                      *
                                        *
v.                                      *    Case #        7:21-cv-00062-WLS
                                        *
BOARD OF REGENTS OF THE                 *
UNIVERSITY SYSTEM OF                    *
GEORGIA d/b/a VALDOSTA                  *
STATE UNIVERSITY,                       *
                                        *
        Defendant                       *

**DEFENDANT'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant in the above-styled action, by and through its undersigned

counsel, and files this its Brief in Support of its Motion for Summary Judgment, as follows:

**Introduction**

Jamie Bird is a former VSU employee who worked as a Manager in Dual Enrollment under

Admissions. Ms. Bird alleges that she has been subject to a hostile work environment and retaliated

against in violation of Title VII.   She also alleges violations of Georgia's Whistleblower Statute.

However, as discussed below, Ms. Bird has not established a *prima facie* case and her Complaint

should be dismissed.

On August 20, 2020, Ms. Bird filed a complaint of harassment based on sex with VSU's

Office of Social Equity. This complaint was investigated by a neutral third party, Dr. Janice Lyn who

served as the Interim Director for the Office of Social Equity from September 8, 2020 through

1

December 31, 2020, handling Title IX cases, Title VII cases and ADAAA accommodations. Dr. Lyn was new to VSU and was not familiar with either Ms. Bird or the alleged respondent, Dr. Carr.

The allegation of sexual harassment was based on an incident that occurred on February 20, 2019, after a dual enrollment student committed suicide. On that date, Dr. Rodney Carr, the VP for Student Success at VSU, entered Ms. Bird's office to check on Ms. Bird and to see how she was doing after being notified of the suicide. Dr. Carr entered Ms. Bird's office, told Ms. Bird she looked upset, and then gave her a hug. Ms. Bird contends that she pushed Dr. Carr away and opened her door and Dr. Carr left shortly thereafter. She admits that Dr. Carr had never done anything that she considered inappropriate before the hug, or afterwards.

Shortly after the incident in February, 2019, Plaintiff sent an email to high school guidance counselors wherein she urged the counselors to advise their students to attend a four year institution to get dual enrollment credits. The email resulted in Dr. Richard Carvajal receiving a phone call from the President of a technical college who was upset that the email was disparaging towards technical colleges. As a result, Plaintiff received a written reprimand which did not result in any decrease in pay or benefits. Ms. Bird contends the reprimand was retaliation for her email.

No information regarding Ms. Bird's allegations of retaliation or harassment provided to the Office of Human Resources, the Office of Social Equity, or Dr. Carr until August 2020. Furthermore, VSU has no record or knowledge that Dr. Carr was told that the 2019 interaction made Ms. Bird feel uncomfortable until the complaint was submitted August 2020. The Complaint was submitted approximately one month after Ms. Bird became aware that she would be subject to a Reduction in Force necessitated by budget constraints brought on by the COVID pandemic.

In regard to the reduction in force (RIF) decision, there were legitimate legal

nondiscriminatory and non-retaliatory reasons for this decision. (Dep. of Dr. Richard Carvajal, pp. 52-68).  The cuts to VSU's state allocation and tuition budgets alone totaled $12.1 million for the 2021 fiscal year. To meet that deduction, it was allocated across all units at the University while trying to preserve instruction as the core mission of VSU.

Plaintiff also alleges that the actions of the Defendant constituted a violation of Georgia's Whistleblower Act contained at O.C.G.A. §45-1-4.   However, the Plaintiff has failed to establish that she was retaliated against for disclosing a violation of or non-compliance with a law, rule, or regulation and therefore her whistleblower claims must fail.

## Standard of Review

The moving party's burden in a motion for summary judgment is discharged by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden then shifts to the non-movant to establish that there is a genuine issue as to facts material to the non-movant's case. *Thompson v. Metropolitan Multi-List, Inc.*, 934 F.2d 1566, 1583 n.16 (11th Cir. 1991).  If the non-moving party's response contains nothing more than conclusory allegations, the Court must enter summary judgment in favor of the movant. *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

## Argument and Citation of Authority

### Federal Claims

**I.     Plaintiff's Title VII claims fail.**

    **A.     Plaintiff has insufficient evidence to support a cause of action for hostile-work-environment sexual harassment.**

"To prove a hostile work environment claim, an employee must show that the workplace is

permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."    *Smelter v. Southern Home Care Servs., Inc.,* 904 F.3d 1276, 1284 (11th Cir. 2018)(internal quotation and citation omitted).   To make a *prime facie* allegation of such conduct, plaintiff must allege "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . ., ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability."   *Miller v. Kenworth of Dotham, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

### 1.    The conduct at issue was not sufficiently severe or pervasive to alter the terms and conditions of Bird's employment.

Harassment is severe or pervasive for Title VII purposes only if it is both subjectively and objectively severe and pervasive. *Mendoza v. Borden*, 195 F.3d 1238, 1246 (11th Cir. 1999). "Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive, and harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000). In determining whether harassment is objectively severe and pervasive, courts consider "the frequency of the conduct," "the severity of the conduct," "whether the conduct is physically threatening or humiliating, or a mere offensive utterance," and "whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246.

In the present case, the Plaintiff's allegations fail to meet the standard required to show that the workplace harassment was objectively severe or pervasive enough to create an abusive working environment.    The Plaintiff complains only of the one hug that occurred following the suicide of a dual enrollment student.   (Dep. of Jamie Bird, pg.  65).   The Plaintiff admits that Dr. Carr never touched her either before or after the incident wherein he consoled her following the death of the student. (Dep. of Jamie Bird, pg. 63).  The Plaintiff further admits when Dr. Carr entered her office, he told her she looked upset and told her he was going to do something he didn't typically do before he hugged her for a very brief time period.  (Dep. of Jamie Bird, pp. 59-60).   This is simply not sufficient to constitute severe or pervasive conduct.      Therefore, the Plaintiff's Title VII sexual harassment claim must fail.

The *Mendoza* court performed an exhaustive review of behavior found to be insufficiently severe or pervasive to support a harassment claim by other courts, much of which is far more troublesome than the behavior at issue here:

> *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264–67 (5th Cir.1999) (noting it was "dubious" whether several sexually oriented comments and gestures and an implied threat of retaliation for refusing a sexual advance would be sufficient to establish a hostile environment) . . . *Adusumilli v. City of Chicago*, 164 F.3d 353, 357 (7th Cir.1998) (holding actions insufficient to support hostile environment claim where co-employees teased plaintiff, made sexual jokes aimed at her, asked her what "putting one rubber band on top and another on the bottom means," commented about her low neck tops, repeated staring at her breasts with attempts to make eye contact, and four incidents of touching her arm, fingers or buttocks); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1365–66 (10th Cir.1997) (holding five "sexually-oriented, offensive" statements over sixteen months insufficient to show hostile environment, even though one of the harasser's statements occurred while he put his arm around plaintiff, looked down her dress and said, "well, you got to get it when you can") . . . *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 823–24 (6th Cir.1997) (reversing jury verdict and finding conduct was "sex-based" but insufficiently severe or pervasive to state actionable claim, where conduct over a four-month period involved repeated sexual jokes . . .) *Baskerville v. Culligan Int'l*

*Co.*, 50 F.3d 428, 430 (7th Cir.1995) (holding insufficiently severe or pervasive to support a hostile-environment claim nine instances of offensive behavior over seven months . . . ) . . . *Mendoza*, 195 F.3d at1246-47.

As illustrated by the foregoing cases, the behavior at issue here falls far short of meeting the severe-and-pervasive standard.

It is unclear if Plaintiff is making a claim for gender discrimination, but she cannot establish a *prima facie* case, which requires the plaintiff to prove that: (1) the plaintiff belongs to a protected class; (2) she was subjected to adverse job action; (3) the employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job. *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1310 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

In the present case, Plaintiff cannot present any evidence sufficient to satisfy elements two or three of a *prima facie* case, and therefore any gender discrimination claim separate and distinct from the hostile environment claim is also subject to summary judgment.

## II.    *Plaintiff's Title VII retaliation claims fail.*

In order to establish a *prima facie* case for retaliation under Title VII, a claimant generally must show that (1) she engaged in statutorily protected activity; (2) she suffered the type of materially adverse action that would dissuade a reasonable employee from engaging in the statutorily protected activity; and (3) there was a causal relationship between the events. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006). In order to prove that she engaged in "statutorily protected activity," a plaintiff must show that she "oppose[d] an unlawful employment practice." *Wynn v. Paragon Sys., Inc.*, 301 F. Supp. 2d 1343, 1354 (S.D. Ga. 2004).

Plaintiff focuses on two separate events which she considers retaliatory in nature.    First,

following the February 20, 2019 hug, Plaintiff contends that she was given a written reprimand for sending out an email to high school counselors.   However, Plaintiff had made no allegations of harassment prior to the written reprimand, and the reprimand simply does not constitute adverse employment action.  Plaintiff also contends that being subjected to a system wide reduction in force, which eliminated her position at the end of 2020 was somehow retaliatory.  However, Plaintiff received notice of the reduction in force on July 17, 2020 before she made a complaint of harassment with the University.    As previously shown, Plaintiff did not file a Complaint of harassment or retaliation based on sex until August 20, 2020, when she filed a Complaint with the Valdosta State University's office of Social Equity.   Therefore, Defendant could not have retaliated against the Plaintiff by choosing her for the reduction in force since she was notified by letter dated July 17, 2020 that her position would be eliminated.  Therefore, Plaintiff cannot establish a retaliation claim at all.   Furthermore, Plaintiff cannot show that the final decision makers were aware of any of her allegations prior to the decision to subject her to the reduction in force.

A.    **Plaintiff did not suffer an adverse employment action when she received the written reprimand.**

Plaintiff cannot establish that she suffered an adverse employment action with regard to the reprimand.  "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3rd Cir. 1997) (citation and internal marks omitted).  Conduct that falls short of an ultimate employment decision must meet "some threshold level of substantially . . . to be cognizable under the anti-retaliation

clause." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998).  In evaluating

what actions meet that required level of substantiality, we recognize that "Title VII[] is neither a

'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'"

*Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1178 (10th Cir. 1999) (citation omitted).

Plaintiff contends that she suffered an adverse employment action when she was given a

written reprimand for sending the email to the high school guidance counselors.  However, the email

was sent on February 26, 2019 and Plaintiff had made no complaint to VSU concerning any

harassment at that time.  As previously shown, the Plaintiff did not make a complaint concerning

the hugging incident with Dr. Carr until August, 2020, almost 18 months after the email which led

to the reprimand.  Furthermore, Plaintiff admitted that she did not suffer any decrease in benefits

or pay as a result of the reprimand.  (Dep. of Jamie Bird, pp. 96-97).

A Title VII discrimination claim "rarely may be predicated merely on [an] employer's

allegedly unfounded criticism of an employee's job performance, where that criticism has no

tangible impact on the terms, conditions, or privileges of employment," *Davis v. Town of Lake Park*,

245 F.3d at 1242 (11th Cr. 2001). Subsequent Eleventh Circuit cases have essentially transformed

"rarely" into " never." *See, e.g., Barnett v. Athens Regional Medical Center, Inc.,* 550 Fed.

Appx. 711, 713 (11th Cir. 2013). ("We have held [in *Davis*] that memoranda of reprimand or

counseling that amount to no more than a mere scolding, without any following disciplinary action,

do not rise to the level of adverse employment actions sufficient to satisfy the requirements of Title

VII.") (internal quotes omitted); *Wallace v. Georgia Department of Transportation*, 212 Fed. Appx.

799, 801 (11th Cir. 2006) ("Under the standard articulated in *Davis*, [there was no] adverse

employment action [because] [t]he written reprimand did not lead to any tangible harm in the form

of lost pay or benefits [and] there is no evidence that [the plaintiff] has been denied job promotions as a result of the written reprimand."); *Embry v. Callahan Eye Foundation Hospital*,  147 Fed. Appx. 819, 828-29 (l 1th Cir. 2005) (plaintiff "failed to cite evidence showing that this reprimand resulted in her suffering any tangible consequences in the form of loss of pay or benefits, and it, thus, was not an 'adverse employment action .' ") (citing *Davis*).  Thus, any retaliation claim based on the written reprimand must be dismissed.

### B.      Plaintiff cannot establish that the Reduction in Force was retaliatory.

As previously shown, Plaintiff did not file a Complaint of harassment or retaliation based on sex until August 20, 2020, when she filed a Complaint with the Valdosta State University's office of Social Equity.   Therefore, Defendant could not have retaliated against the Plaintiff by choosing her for the reduction in force since she was notified by letter dated July 17, 2020 that her position would be eliminated.  Therefore, Plaintiff cannot establish a retaliation claim at all.

Furthermore, Plaintiff cannot establish that the reduction in force was based in any way on the February 26, 2019 email for which she was issued a written reprimand.  Plaintiff cannot establish any relationship whatsoever to the email and thus cannot satisfy the causal link element required for a *prima facia* case for retaliation.  *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006).

In addition, Plaintiff was notified that she would be subject to the reduction in force in July of 2020, approximately seventeen (17) months after she sent the email to the high school counselors. If there is a substantial delay between allegedly protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter

of law.  *Mason v. George,* 24 F.Supp. 3rd 1254, MD Ga., 2014.

Finally, the Plaintiff cannot establish that the final decision makers who made the decision on the reduction in force were aware of any of her allegations against Dr. Carr, or the email which she sent to the high school counselors.  As has already been established, they certainly could not have been aware of her complaint which was filed after the reduction in force decisions were made.  As testified to by Dr. Carr, the final decision makers on the reduction in force were members of the President's cabinet.   Those members consisted of  Dr. Richard Carvajal, Traycee Martin, Jeannine Boddie-Lavan, R. T. Smith, Vince Miller, and Dr. Carr.

"To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Florida Board of Regents, et al.,* 212 F.3d 571, 590 (11th Cir. 2000).  (internal citation omitted).   "Discrimination is about actual knowledge , and real intent, not constructive knowledge and assumed intent.  When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker." *Walker v. Prudential Prop. & Cas. Ins. Co.,* 286 F.3d 1270, 1274 (11th Cir. 2002)(internal citations omitted.)   Since Plaintiff cannot show that the decision makers on the Reduction in Force were aware of her allegations, her claim must fail.

### *State Law Claims*

**A.**     **Plaintiff cannot establish a violation of the Georgia Whistleblower Act**

The Georgia Whistleblower Act

prohibits public employers from (1) retaliating against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency; or (2) retaliating against a public employee for objecting to, or refusing to participate in, any activity, policy, or practice of the public

employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation. *Coward v. MCG Health, Inc.*, 342 Ga. App. 316, 318 (2017), reconsideration denied (July 11, 2017), cert. denied (Feb. 5, 2018).

In evaluating whether a claim under the Whistleblower Act is subject to summary judgment, Georgia courts apply the *McDonnell Douglas* burden-shifting analysis used in Title VII retaliation cases. *Id.*, citing *Tuohy v. City of Atlanta*, 331 Ga. App. at 846, 848–849 (2015). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–806, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

> Under the *McDonnell Douglas* framework, the plaintiff must first make a *prima facie* case of retaliation. If the plaintiff makes a *prima facie* case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. If the employer successfully meets this burden of production, then the burden shifts back to the plaintiff to show that each proffered reason was pretext. *Coward*, 342 Ga. App. at 319, quoting *Tuohy*, 331 Ga. App. at 849.

To make out a *prima facie* case of retaliation under the Georgia Whistleblower Act, a plaintiff must show that: (1) she was employed by a public employer; (2) she made a protected disclosure or objection; (3) she suffered an adverse employment action; and (4) there is some causal relationship between the protected activity and the adverse employment action. *Albers v. Georgia Bd. of Regents of Univ. Sys. of Georgia*, 330 Ga. App. 58, 61 (2014).

**I.      *Plaintiff cannot establish that she disclosed a violation of or non-compliance with a law, rule, or regulation as required by the Georgia Whistleblower Act.***

In Count III of her Complaint, Plaintiff makes a claim under the Georgia Whistleblower Act and contends that she was retaliated against for sending the email to the high school guidance counselors urging them to make sure that dual enrollment students were enrolled in four year colleges.  However, the Plaintiff has not shown that she was "disclosing a violation of or non-

11

compliance with a law, rule, or regulation to either a supervisor or government agent," as is required pursuant to O.C.G.A. §45-1-4(a)(5).

As previously shown, the email at issue urges high school guidance counselors to steer their students towards four year colleges for their dual enrollment credits.   Plaintiff cannot identify any law, rule or regulation which requires that DE students be required to attend four year colleges nor has she shown that she disclosed any violation to a supervisor or government agency. Therefore, her whistleblower claim based upon the email is subject to summary adjudication.

**II.**      ***The Reduction in Force decision  was too remote in time from Bird's protected activity for a causal relationship to be inferred.***

To the extent Plaintiff is contending that the Reduction in Force was related to the email, even if Bird  could meet the requirement that she show that the committee was aware of her protected activity, which she cannot, she would nonetheless be unable to demonstrate causation. "Sufficient knowledge of the protected expression," which is absent here, must be coupled with "close temporal proximity between this awareness and the adverse action." *Freeman v. Smith*, 324 Ga. App. 426, 431 (2013), quoting *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir.2004). "[M]ere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case . . . must be very close." *Freeman*, 324 Ga. App. at 431, quoting *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (emphasis added; citation and punctuation omitted). "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Freeman*, 324 Ga. App. at 431, quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir.2007) (holding that three-month period

between plaintiff's April 2005 complaints of sexual harassment and the termination of her employment in July 2005, "without more, does not rise to the level of 'very close.' ").

Bird allegedly engaged in protected activity in February of 2019 when she sent the dual enrollment e-mail. She was notified that she was part of the RIF on July 17, 2020– seventeen months after e-mail was sent. Without more – and there is nothing more – this seventeen-month gap in time would be insufficient to establish a causal connection even if knowledge on the committee's part could be shown. For this second and independently sufficient reason, summary judgment is warranted.

### III. *Plaintiff cannot establish that she was retaliated against for disclosing a violation of Title VII*

In Count IV of Plaintiff's Complaint, Plaintiff contends that the Defendant violated the Georgia Whistleblower Act by retaliating against her for alleging violations of Title VII.

As has previously been shown, the Plaintiff did not make a complaint concerning the hug by Dr. Carr in February, 2019 until August, 2020, when she filed a complaint of harassment with VSU's office of Social Equity. As has previously been established, Plaintiff had already been informed that she was subject to the Reduction in Force in July, 2020. Therefore, Defendant could not have retaliated against Plaintiff since she had never made a complaint about what she contends was sexual harassment i.e., the hug. Furthermore, it is clear as set out in Section 1(a) supra, that the hug did not constitute actionable harassment, and this cannot form the basis for a whistleblower claim.

Furthermore, the Plaintiff cannot establish that the final decision makers on the Reduction in Force had any knowledge of the incident with Dr. Carr. According to the testimony of Dr. Carr, which is undisputed, the President's Cabinet made the decisions concerning the reduction in force.

13

(Dep. of Dr. Rodney Carr, pg. 46). As testified to by Dr. Carr, the cabinet members who signed off on the reduction in force decisions consisted of Dr. Richard Carvajal, Traycee Martin, Jeannine Boddie-Lavan, R. T. Smith, Vince Miller and Dr. Carr. *Id.*

To meet the fourth element of a *prima facie* case under the Georgia Whistleblower Act, a plaintiff much show "that the decision-maker was aware of the protected disclosure and that the disclosure and action were not wholly unrelated." *Forrester v. Georgia Dep't of Human Servs.*, 308 Ga. App. 716, 726, 708 S.E.2d 660, 668 (2011), citing *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir.1999) ("At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action.")[1]. Where the evidence shows unequivocally that the decision maker was *not* aware of the protected conduct at the time it took the adverse employment action, the employee can avoid summary judgment only by producing specific and significant evidence to the contrary. *See Forrester,* 308 Ga. App. at 729; *Clover*, 176 F.3d at 1354. The Eleventh Circuit, in a case repeatedly cited by Georgia courts addressing claims under the Whistleblower Act, has identified two kinds of evidence that could allow a plaintiff to overcome such testimony by a decision-maker.

One is direct impeachment evidence. *Clover*, 176 F.3d at 1355, citing *Goldsmith v. City of Atmore*, 996 F.2d 1155 (11th Cir. 1993) (finding jury issue on causation where mayor claimed he was unaware of employee's protected activity but had previously testified that he "may have" discussed it with city councilmember who was aware of it prior to taking action against employee).

---

[1]"Because there are few decisions from Georgia courts interpreting the causal connection element of a whistleblower retaliation claim, we look to federal decisions for guidance." *Freeman v. Smith*, 324 Ga. App. 426, 430–31 (2013).

The other is evidence that someone who did know about the protected activity conveyed that information to the decision-maker. *Clover*, 176 F.3d at 1355. This latter standard is stringent; mere evidence that the decision-maker communicated with persons who were aware of the protected activity is not sufficient. *Id.* "'[C]ould have told' is not the same as 'did tell,'" and any inference that a decision-maker was aware of protected conduct merely because he communicated with persons who were aware of it "would be pure speculation." *Id.* At a bare minimum, evidence that it was the "standard practice" of the person aware of the protected conduct to provide such information to the decision-maker is required. *Id.*

The record does not support an inference that any of the small group of people who were aware of the incident between Dr. Carr and Ms. Bird, passed that information along to the members of the cabinet who approved the RIF.   "Could have told" is not the same as "did tell," and here, it is unclear whether anyone even "could have told" the cabinet.

Bird cannot show that the decision makers (the cabinet) "w[ere] aware of the protected disclosure," and she consequently cannot make out a *prima facie* case under the Whistleblower Act.

**Conclusion**

For the foregoing reasons, Defendant respectfully requests that the Court grant Summary Judgment on all claims.

This 2nd day of May, 2022.

/s/ G. Todd Carter
G. Todd Carter
Georgia Bar Number: 113601
Special Assistant Attorney General
tcarter@brbcsw.com
**ATTORNEY FOR DEFENDANT**
BROWN, READDICK, BUMGARTNER
CARTER, STRICKLAND & WATKINS, LLP

15

5 Glynn Avenue
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| JAMIE T. BIRD, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case #    7:21-cv-00062-WLS |
| | * | |
| BOARD OF REGENTS OF THE | * | |
| UNIVERSITY SYSTEM OF | * | |
| GEORGIA d/b/a VALDOSTA | * | |
| STATE UNIVERSITY, | * | |
| | * | |
| Defendant | * | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

Submitted this 2nd day of May, 2022.

/s/ G. Todd Carter
G. Todd Carter
Georgia Bar Number: 113601
Special Assistant Attorney General
Attorney for Defendant
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX
tcarter@brbcsw.com

17