**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| JAMIE T. BIRD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action File No. |
| v. | ) |
| | ) 7:21cv62 (WLS) |
| BOARD OF REGENTS OF THE | ) |
| UNIVERSITY SYSTEM OF | ) |
| GEORGIA d/b/a VALDOSTA | ) |
| STATE UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S BRIEF IN OPPOSITION OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

COMES NOW the Plaintiff JAMIE T. BIRD and files this *Brief in Opposition to Defendant's Motion for Summary Judgment* and shows the Court as follows:

INTRODUCTION

Dr. Rodney Carr is the Vice President ("VP") of Student Success at VSU. Carr has a documented history of treating women inappropriately. Dr. Richard A. Carvajal is the president of VSU. Carvajal has a documented history of protecting and promoting Carr despite that inappropriate treatment of women. That history continued with Carr and Carvajal at VSU. Bird was a woman that refused to succumb to that inappropriate treatment and Bird stood up against Carr. Carr was angered and embarrassed by Bird's refusal, and retaliated against Bird. First, he issued a reprimand against Bird for doing her job, citing to multiple alleged damages Bird caused by an email, despite there being no evidence of any such damage. Second, he moved Bird to another department under a new supervisor and promoted males over her (Freidhoff and Hogan), males that he believed he could control. Third, he

condescended and taunted Bird in front of other employees in her department for having stood up against Carr's inappropriate hug behind closed doors; this condescension and taunting occurred during conversations related to Bird's job categorization, department, supervisor, and function (and specifically Bird's requests that Carr correct these).  Later in 2020, Carr requested access to the written reprimand he issued her the prior year for consideration in Bird's job restructuring.  Fourth, after Bird was already in a precarious position, weakened by Carr's retaliation, he lined her up for termination in the convenient and happenstance RIF of the COVID-19 pandemic that fell in his lap.  The pandemic is a pretextual red herring and it is the Defendant's only defense to repeated and obvious documentation of unlawful, adverse employment action.  The pandemic merely provided a cloak, final straw, and ease for Carr to rid himself of Bird.  There is an abundance of evidence that, despite the passage of time between the hug and the reprimand/email, that these two incidents were used to terminate Bird in the pandemic-related RIF.  Fifth, Carr influenced other decision-makers at VSU to decide against Bird's internal appeals to the Board of Regents and to tamper with her Title IX investigation.  During the time of these multiple retaliations against Bird, multiple other persons were promoted, hired, or given raises to fill the same position and role that Bird did better for less pay (even though the purpose of the pandemic-RIF was to cut budgets).  Finally, after Bird's termination, a new position was posted in Bird's department, to which Bird applied, and the job was given to someone less qualified.

<u>SUMMARY OF PLAINTIFF'S COMPLAINT</u>

Bird raises claims against the Board of Regents of the University System of Georgia d/b/a Valdosta State University (hereafter "Defendant" or "VSU") under Title VII of the Civil Rights Act of 1964 (hereafter "Title VII") for Gender Discrimination (Count 1)  and

Retaliation Discrimination (Count 2); and under the Georgia Whistleblower Act (O.C.G.A. §

45-1-4) ("GWA") for violations against Plaintiff related to the laws, rules, and regulations of

the Georgia Dual Enrollment program (Count 3) and related to violations against the Plaintiff

related to Title VII and Title IX (Count 4).  Doc. #1-3 at Page 35.

### PROCEDURAL HISTORY

Plaintiff filed her Complaint in the Superior Court of Fulton County, Georgia on

January 20, 2021.  Doc #1-3.  Defendant removed the Complaint to the United States District

Court for the Northern District of Georgia on February 22, 2021.  Doc. # 1.  On Defendant's

motion the case was transferred to the Middle District of Georgia on May 24, 2021.  Doc.

##9, 15.

### STANDARD OF REVIEW

The Eleventh Circuit will review the Court's decision in this motion "de novo."

*Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008)(citing *Brooks v. County Comm'n of

Jefferson County, Ala.*, 446 F.3d 1160, 1161-62 (11th Cir. 2006)).  The Court should "consider

all evidence and reasonable factual inferences drawn therefrom in a light most favorable to

the non-moving-party."   *Crawford* at 964 (citing *Rojas v. Fla. Dept' of Bus. & Prof'l

Regulations Pari-Mutual*, 285 F.3d 1339, 1341-42(11th Cir. 2002)(*per curiam*)).

### SUMMARY OF DEFENDANT'S ARGUMENTS

Defendant argues that Plaintiff's Title VII claims fail because her terms and conditions

of employment were not altered, that Plaintiff only complained of one hug, there was too

much time that past between incidents, and that the COVID-related RIF cuts off all their

liability as the legitimate non-discriminatory reason.  None of these arguments is valid due to

abundant evidence to the contrary.

Defendant argues that Plaintiff's claims under the GWA because Bird cannot establish that Bird disclosed a law, rule, or regulation; that Bird's termination under the RIF was too remote to be related; and that there was no retaliation in violation of the GWA because the decision makers in the RIF were unaware of Bird's GWA-protected activity.  The evidence overwhelmingly shows the contrary.

<u>CITATIONS TO AUTHORITIES:  TITLE VII</u>

On any Title VII claims a plaintiff . . . may satisfy her burden [of proving discriminatory treatment] [on a preponderance of the evidence standard] by presenting direct . . . or circumstantial evidence . . . ."  *Crawford* at 975-976 (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).  Plaintiff's burden to show "pretext requires the court to determine, in view of all the evidence, 'whether the plaintiff cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct."  *Crawford* at 976 (citing *Combs v. Plantation Patterns*, 106 F.3d1519, 1538 (11th Cir. 1997)).  The Eleventh Circuit, in reversing the district court's grant of summary judgment on Title VII retaliation and race discrimination claims against the Board of Regents (Georgia State University), held that a plaintiff "had cast sufficient doubt on the proffered reasons to permit a reasonable factfinder to conclude that the reasons actually were a pretext for discrimination and retaliation."  *Crawford* at 976-977 (discussing defendant's "decision to eliminate the new position," "the circumstances leading up to [defendant's] decision – in particular numerous grievances and complaints [plaintiff] filed – a jury question exists on the issue of whether defendants' reasons for eliminating the job were a pretext for retaliation.")

(citing *Combs*, 106 F.3d at 1538 (11th Cir. 1997), *Holifield v. Reno*, 115 F.2d 1555, 1565 (11th Cir. 1997)(*per curiam*)).

 "[C]laims challenging disparate treatment, *quid pro quo* sexual harassment, and hostile work environment are all claims of gender discrimination" under Title VII. *DeSouza v. Office of Children & Family Servs.*, 18-CV-2463 at 7 (E.D.N.Y. June 12, 2019). The Eleventh Circuit reversed a district court that granted summary judgment to a defendant on a Title VII gender discrimination case, where a plaintiff had alleged hostile work environment sexual harassment, quid pro quo sexual harassment, and retaliation. *Lipphardt v. Durango Steakhouse of Brandon*, 267 F.3d 1183, 1186 (11th Cir. 2001). The Eleventh Circuit held that a prior relationship which led to "personal animosity," and "brush[ing] up against [the plaintiff] in an inappropriate way while at work," were "sufficient to raise a factual question of whether [the plaintiff] had an objective belief that she was the victim of harassment." *Lipphardt v. Durango Steakhouse of Brandon*, 267 F.3d 1183, 1189 (11th Cir. 2001)(citing *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1246 (11th Cir 1998)). "On a claim for retaliation, the standard is not whether there is a valid hostile work environment claim, but rather, whether [the plaintiff] had a good-faith reasonable belief that she was the victim of such harassment. Reasonable minds could disagree on this issue, which makes it an inappropriate candidate for judgment as a matter of law." *Lipphardt* at 1188.

This Court has held that "In a situation where a male sexually harasses a female, there is the presumption that he does so *because* she is a female and that he would not do the same to a male." *McCoy v. Macon Water Authority*, 966 F.Supp. 1209, 1217 (M.D.Ga. 1997).

The Eleventh Circuit reviewed a Title VII gender discrimination case alleging hostile working environment sexual harassment and quid pro quo sexual harassment where a plaintiff

was fired for her refusal to accede to her boss's demands. *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1557 (11th Cir. 1987). Where the employer's agent had "repeatedly harassed her and threatened her job . . . causing her to doubt her job security," that was sufficient to "establish . . . a genuine issue of material fact as to whether [the] conduct affected a 'term, condition, or privilege' of her employment" and that "the district court therefore should have denied summary judgment for defendant on this issue." *Sparks* at 1561.

The Eleventh Circuit held that a plaintiff had met her burden of proof sufficient to survive summary judgment because "the plaintiff: (1) belongs to the statutorily protected group, (2) was qualified for the job, (3) was discharged, and (4) was replaced by a person outside the protected group." *Sparks* at 1562 (citing *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1538 (11th Cir. 1987). Further, "An employee may rebut a defendant's claim that it had a legitimate reason for firing her 'indirectly by showing that the employer's proffered explanation is unworthy of credence." *Sparks* at 1563 (Eleventh Circuit noting that the employer had not followed its own rules and procedures) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

<u>CITATIONS TO AUTHORITIES:  GEORGIA WHISTLEBLOWER ACT</u>

The GWA provides as follows:  "No public employer shall make, adopt, or enforce any policy or practice preventing a public employee from disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency." O.C.G.A. § 45-1-4 (d)(1).

No public employer shall retaliate against a public employee for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that

the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation.

O.C.G.A. § 45-1-4 (d)(3).

"Retaliate" or "retaliation" refers to the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency.

O.C.G.A. § 45-1-4(a)(5).

No public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity.

O.C.G.A. § 45-1-4 (d)(2).

The laws, rules, and regulations of Dual Enrollment in this State of Georgia require counseling of high school students before they enroll.

No later than the first day of February each year, each eligible high school shall provide general information about the program, including such forms, to all its eligible high school students. An eligible high school shall also provide counseling services to such students and their parents or guardians before the students enroll in the program. Prior to participating in the program, the student and the student's parent or guardian shall sign the form provided by the eligible high school or by an eligible postsecondary institution stating that they have received the counseling specified in

this subsection and that they understand the responsibilities that shall be assumed in participating in the program.

O.C.G.A. § 20-2-161.3(d).    Section 1604.3 of the 2018-2019 Dual Enrollment Programs Regulations provides that "1. A student must maintain Satisfactory Academic Progress (SAP), as defined and certified by his or her Eligible Postsecondary Institution;" and that "Eligible Postsecondary Institutions have sole discretion and responsibility for evaluation and approval of any such student appeals [for 'students with dual-enrollment credit hours that fail to meet the quantitative standards (pace) for degree completion . . .']."  Exh. 58.  Section 1605.1 number 5 of the 2018-2019 Dual Enrollment Programs Regulations provides,

> Prior to participating in the Dual Enrollment Program, the student and the student's parent(s) or guardian shall sign an advisement form provided by the Eligible High School or Home Study program acknowledging complete understanding of the responsibilities assumed by the student while participating in the Dual Enrollment Program . . . .

Exh. 58.  In the 2018-2019 and 2019-2020 Sessions, the Georgia General Assembly sought to reduce the costs of the dual enrollment program in the state.  Exh. 22.  In the 2019-2020 Session, the Georgia General Assembly enacted House Bill 444, Act 237, the Dual Enrollment Act, which restricted high school students from retaking dual enrollment courses. O.C.G.A. § 20-2-161.3 (2020) (2020 H.B. 444).

## FACTS & ARGUMENT

Plaintiff incorporates by reference as is fully stated herein *Plaintiff's Statement of Material Facts to Which There Exists a Genuine Issue to be Tried*.

Page 8 of 20

During his tenure at VSU, Carr has held the position of VP for Student Success and has been supervised by President Carvajal.  Carr worked at Bainbridge State College from September 2011 to the date of his hire at VSU in June 2017.  During Carr's tenure at Bainbridge State College, Carr was supervised by Richard Carvajal.  Carvajal has been the president of VSU from January 2017 to the present.  Prior to serving as VSU's president, Richard A. Carvajal was the president of Bainbridge State College.  Exh. 60.  During the time Car was supervised by Carvajal, Carr was investigated for his "vulgar and sexually charge language," creation of a "hostile workplace," '"inappropriate behavior," including "physical contact with a female employee."  Exh. 47, 48.  On March 30, 2013, Carvajal, issued Carr a Written Reprimand for his "aggressive and unprofessional" behavior and incidents of "sexually charged language and cursing."  Exh. 47, 48.  On October 28, 2013, Carvajal noted, in writing, that he "can't take that risk" [of promoting Carr to be VP of Academic Affairs at Bainbridge] College, however Carvajal assumed that risk and still Carvajal promoted Carr to be both the VP for Academic Affairs and Students Affairs at Bainbridge College.  Exh. 47 pg. 4 (noting in appropriate, intimate conduct with female coworkers and that Carr will "never be successful as a president"); Deposition ("Dep.") of Michael Kirkland, pg. 24 (referring to Exh. 47, 48).

Michael Kirkland (former employee of Bainbridge College) noted that Carvajal and Carr are doing the same things at VSU, to Bird, that they did at Bainbridge College, to other women, years before.  Dep. of Michael Kirkland at pgs. 82-85.

On the morning of February 20, 2019, Dr. Carr entered in to Mrs. Bird's office (while she was alone), closed her door, stated that he was going to do something that [he doesn't] normally do in the office, entered in to the small space behind Mrs. Bird's desk near her chair

(before she had an opportunity to exit that area), placed one hand behind her neck, placed his other hand on her lower back, and gave Mrs. Bird a tight full body hug. Dep. of Jamie Bird, pg. 57-59, pg. 88, lines 17-23. Mrs. Bird felt threatened and uncomfortable, immediately pushed Carr away, stepped beside him, stated that she needed to open her door, came back to her desk, and stated that she had work to do. Dep. of Bird, pg. 59-60; Dep. of Lisa Long, pg. 110. Carr responded to Mrs. Bird's pushing Carr away, distancing herself from him, and opening her door with anger: his face became red, and he asked why she did that? Dep. of Bird, pg. 59-60. Mrs. Bird immediately requested that Mr. Carr never be let back in her office alone again. Dep. of Bird, pg. 60.

On or about January 22, 2020, Mr. Carr entered Mrs. Bird's office when she was alone again to discuss Bird's job restructuring, moving Bird's job to a different department, and her classification. During this encounter Carr made fun of Bird's extreme discomfort from his February 20, 2019 hug, condescendingly stating that Bird did not like hugs, did not like being touched, did not like her door being closed when he was in the office, and stated that Carr was relegated to only giving Bird an air-hug. This time the door was open, and the conversation was overheard by Ryan Hogan and Lisa Long. Dep. of Ryan Hogan, pg. 134-135, pg. 174, lines 3-13, Dep. of Lisa Long, pg. 110-113; Exh. 29, Exh. 30.

Later in 2020, when Carr was still discussing Bird's job restructuring with Hogan (including moving Bird to a different department), Carr again made reference to the March 5, 2019 Written Reprimand (" 'Did Tee leave any files behind?' Specifically asking if there were any files relating to any write-ups [on Bird].") Dep. of Hogan pg. 150-151.

It was Plaintiff's job, and the job of the employees in the VSU Office of Admissions/Dual Enrollment to comply with the laws, rules, and regulations related to

properly counseling students who would enroll in the VSU Dual Enrollment Program.  Dep. of Jaime Bird, pg. 82, line 10-25, pgs. 83-84; Dep. of Hogan, pg. 66, lines 15-25, pgs. 67-69, pg. 146-149.

VSU's Annual Satisfactory Achievement Progress (SAP) report in 2020 showed a large number of dual enrollments students at VSU who were not achieving satisfactory academic performance which is required under the rules and regulations of the dual enrollment program.  Exh. 25. In light of the numerous students she saw who were not meeting SAP, and who were not being properly counseled prior to entering in to dual enrollment, on February 26, 2019, Mrs. Bird sent an email to the high school counselors regarding academic "course rigor" foundations necessary for students to be "successful once they graduate [high school] and move forward into college;" "choosing the right institution to attend and not one that will just help students 'check off courses.'  This also helps students get the needed academic foundation that will allow them to move forward successfully wherever they go after they graduate."  Exh. 41.  This Dual Enrollment Counseling Email sought "to make sure students are being impacted in a positive way that will enhance their future education;" and advised that "it is critical for those students wanting to attend a 4-year institution after they graduate high school, get their credits from the same type institution." Exh. 41.

Associate VP for Student Success, who is over VSU Dual Enrollment, Rob Freidhoff, stated that he could not disagree with Bird's statement that "it is critical for those students wanting to attend a 4-year institution after they graduate high school, get their credits from the same type institution;" and that "there may be a school like Georgia [UGA] or Georgia Tech

that that is the case." Dep. of Robert Freidhoff, pg. 10, lines 16-24; pg. 105 lines 10-25; pg. 106, lines 102; Exh. 41.

Ryan Hogan, VSU Director of Admissions, testified that he agreed with multiple statements made in Bird's February 26, 2019 Dual Enrollment Counseling Email. Dep. of Hogan pg. 16, lines 14-15; pg. 146 lines 21-25, pgs. 147-149 ("And this is a sort of an issue that [Bird] and I worked on often . . . . a student . . . test[s] well enough to get in to, let's say Okefenokee Tech [a TCSG] . . . [s]o they got admitted to Okefenokee Tech . . . . [but] when that student goes to apply to [VSU], they're not meeting the requirements . . . .")

Lisa Long, the Associate Director of VSU's Office of Admissions stated that "[t]here was nothing wrong with [Bird's Dual Enrollment Counseling Email]. I don't know why she was written up. For the audience she sent it to it was very informative, nothing negative, purely factual." Exh. 29. Long further stated that she agreed with the statement in Bird's email that there's a "level of preparedness that they get at a four-year school versus a technical school." Dep. of Lisa Long at p. 133

At the USG Dual Enrollment Summit 2019, where leaders of Dual Enrollment throughout the USG throughout the state met to discuss common problems and goals, several leaders stated the concerns about differing academic rigor between USG and TSCG institutions for Dual Enrollment. Exh. 24; Dep. of Bird at pgs. 126-129.

Carr's doctoral dissertation, Carr, Rodney B., "Identifying Best Practices for Student Success in Developmental Education in Georgia" (2012), acknowledges that "Two-year colleges have long enrolled students who are academically underprepared." Carr (2012). Exh. 1, pg. 2. "Many students accepted in to two-year colleges are underprepared for the rigor of coursework at

the high level."  Carr (2012), Exh. 1 at 28.  Carr cites the "open-door admissions" policy of 2-year institutions throughout his dissertation.  *Id.*

The Board of Regents publishes official guidance for high school students to choose course with the appropriate academic rigor for their future college goals:  "Students should pursue a challenging and rigorous high school curriculum to be best prepared for a successful college experience and should consult with their high school counselor to determine appropriate courses."  "The USG's selective colleges and universities, such as the Georgia Institute of Technology and the University of Georgia, consider the context of the student's high school when reviewing a student high school curriculum."  Exh. 21, pg. 1, 5(University System of Georgia Freshman Admission Requirements).

VSU's Dual Enrollment Flipbook, available on its websites touts that "high school and home school student in VSU's Dual Enrollment Program benefit from the resources of a major state university, where they can easily transition from high school to college.  The rigor and pace of our classes will prepare you for success anywhere."  Exh. 19.

 On or about March 6, 2019, Carr called Bird and Render Terrell "Tee" Mitchell to his office to discuss Jamie's February 26, 2019 email.  Mitchell was Bird's immediate supervisor; and Mitchell's immediate report was Carr.  Carr discussed the imminent written Reprimand of Bird.  Carr stated that if Jamie ever did something that stupid again that she'd be fired.  Exh. 61.

VSU issued Bird a written Reprimand dated March 5, 2019, drafted by Carr, which Mitchell was forced to sign, stating that Bird's February 26, 2019 Dual Enrollment Counseling Email was considered by the TCSGs to be "offensive," had "a significant adverse impact on recently established relationships that will need to be repaired," and that "Bird

should prepare for . . . negative repercussions in regard to future relationships between her and HS counselors as well as [TCSGs]." Exh. 43; Exh. 61. However, despite multiple depositions of Defendant's agents specifically assigned to Admissions and Dual Enrollment could point to no evidence of any damage to any relationship that affected VSU's dual enrollment or admission, nor could they point to any actual relationship between VSU's dual enrollment program and the Technical Colleges. (Dep. of Rob Freidhoff pg. 16, lines 9-25 (no official involvement of VSU Dual Enrollment with TCSGs/Wiregrass other than Freidhoff's consulting their as a national instruction for Appreciative Advising), pg. 111-113(no evidence that anyone was offended by Bird's Email);(Dep. of Richard Carvajal, p. 160-161, lines 159-161 (no relationship between VSU dual enrollment students and Wiregrass), pg. 168, lines 21-25; pg. 166, lines 1-10); Dep. of Rodney Carr pg. 139, lines 15-25; pg. 140; pg. 141, lines 1-19 (no known reason to hold joint counseling events with TCSGs/Wiregrass for VSU Dual Enrollment students). Not even Carr himself was able to point out one single way in which VSU's dual enrollment program actually partners with the TCSGs. Dep. of Rodney Carr, pg. 146 (lines 23-25); pg. 139, lines 23-24; pg. 140, lines 2-3, lines 9-12, 19-20; pg. 140-141.

Furthermore, a counselor from Lowndes County High School, stated that "Ms. Bird's February 26, 2019 email did not adversely impact the relationship Lowndes County School District has, and continues to have with, Valdosta State University (VSU), regarding student participation in VSU's Dual Enrollment Program." Exh. 62. Additionally, a high school counselor from Valwood School supported Bird and stated that Bird "always [is] going above and beyond and never swaying one way or another (technical or 4-year) in helping them achieve their goals." Exh. 63.

Tee Mitchell did not support Bird' reprimand and opposed any discipline to Bird for the Dual Enrollment Counseling Email.  Exh. 61.

This March 5, 2019, written Reprimand prohibited Bird from counseling students on the "rigor of the curriculum" because it would be "considered offensive" that Technical Colleges were less effective than 4-year institutions in providing a good academic foundation. Exh. 43.  It also prohibited Bird from counseling students in a way that could have any "repercussions from Technical Colleges." Exh. 43.  It was "noted on Ms. Bird's performance evaluation," was "placed in Ms. Bird's permanent personnel file in Human Resources," and threatened possible "further progressive discipline up to and including termination." Exh. 43.

Plaintiff's Dual Enrollment email revealed the past pitfalls suffered by students who were not properly counseled as to the appropriate academic rigor of the dual enrollment courses they should select for the academic challenges of the postsecondary institution or career of their choice; when such counseling is required under law, and when recent legislation cut budgeting and prohibited students from retaking courses.  O.C.G.A. § 45-1-4(d)(1)(2),(a)(5); O.C.G.A.§ 20-2-161.3.  Plaintiff's Dual Enrollment email blew the whistle on her further participation as a dual enrollment advisor in activities, policies and practices of VSU dual enrollment admissions which were in noncompliance with the proper academic rigor counseling required under the laws, rules, and regulations of the Georgia Dual Enrollment program.  VSU retaliated against Plaintiff for sending this email.  O.C.G.A. § 45-1-4(d)(2),(a)(5); O.C.G.A.§ 20-2-161.3.  VSU thereby and thereafter "ma[d]e, adopte[ed], [and] enforce[d] a policy and practice of preventing [the Plaintiff] from disclosing to dual enrollment students and their high school guidance counselors the legally required counseling related to the academic rigor and academic achievement requirements of the program, when

such counseling is required by the laws, rules, and regulations of the Georgia Dual Enrollment program.  O.C.G.A. § 45-1-4(d)(1); O.C.G.A.§ 20-2-161.3.  Defendant is a "public employer" that "retaliate[ed]" against the Plaintiff, a "public employee," with "adverse employment action."

Title IX investigative interviews related to Carr's February 20, 2019 inappropriate hug in Bird's office referenced, several times, the February 26, 2019 dual enrollment counseling Email and the corresponding March 5, 2019 Reprimand.  Exh.s 27, 29, 30.  Multiple witnesses stated that they feared retaliation from Defendant (especially Carr) if they participated in the Title IX investigation.  Exh. 29, 30.

Carr communicated multiple alleged performance issues he had with Bird to VSU's Human Resources Department, all of which are pretext and can be disproven.  Exh. 46 (HR Director Boddie-LaVan's August 24, 2020 letter specifically references the hug, the March 5, 2019 Reprimand, the overall retention rates for VSU Dual Enrollment students allegedly decreasing over the last five years, attaching Bird's March 13, 2019 Annual Review (which referenced the February 26, 2019 email and March 5, 2019 Reprimand).

VSU's Human Resources Department considered all of Carr's communications during the RIF decision-making process; and Boddie-LaVan specifically states that she considered the "RIF packet" in writing Exhibit 46.   Dep. of Jeanine Boddie-LaVan pg. 78, lines 3-15 (HR employee Michelle Jordan documented multiple conversations with Carr which led to Bird's termination.)

No one can seriously believe Defendant's argument that the RIF was what led to Bird's termination at VSU.  HR's system level response letter contains outright contradictions of testimony, including the statement that "Dr. Carr's behavior of not meeting with women

behind a closed door has been previously established by HR in writing;" and that "Carr . . . stated that Dr. Carr's practice when meeting with employees or students of the opposite gender is to have his administrative assistant . . . to sit in on the meeting."  Exh. 46 at 1, 7. The statement is *per se* untrue as documented by Bird's, Carr's, Hogan's, and Long's testimony that Carr, on more than one incident met with Bird, alone in Bird's office. Knowing this false-politically-correct supposed policy of Carr's is bogus, VSU used it against another female employee, this time an "African American," to find that her complaint for race discrimination was unfounded, which forced her to resign.  Dep. of Boddie-LaVan, p. 27-31. Carr knowingly met with Bird in her office alone on three (3) occasions.  First, with the February 20, 2019 intimate hug; second, in the January 22, 2020 you-don't-like-being touched/air hug encounter; and third, on February 3, 2020 when Carr knew Bird was alone in her office.  Exh. 64 (After Carr saw Lisa Long (the only person whose office was close to Bird's office) with Christy Croft at the VSU Bookstore (Exh. 64 at 27:25-28:00), Carr went to Bird's office to discuss her job duties, structuring, reporting, and classification).

Both before and after the RIF plan was concocted, Defendant had unfilled positions, posted new positions, and gave raises to those doing the job functions Bird did. In September 2020, Carr received a salary increase in the amount of $28,112/year.  Exh. 15. In January 2020, Carr promoted Freidhoff and gave him a salary increase of $10,383/year.  Exh. 16. Freidhoff was less qualified than Bird.  Dep. of Rob Freidhoff, p. 113, lines 22-25.

Carvajal testified that, in looking to make budget cuts for the pandemic in May 2020, during the RIF, he directed his cabinet (which included Carr) to look to "hold . . . back" or "not hire" "unfilled positions" before eliminating any existing personnel.  Dep. of Carvajal pg. 57, lines 20-25; pg. 60, lines 7-10, 25; pg. 61, lines 1-6; pg. 64, lines 18-25; pg. 65, lines

1-15.  In 2020 and 2021 six new positions were posted in the Office of Admissions named "Admissions Recruiters."  Exh. 14.  VSU's Human Resources Director reports that Bird's job duties were reassigned to the local [Admissions] recruiters.  Exh. 46 at 6.   It is undisputed that at the time Bird received notice of her termination, the Admissions Office had posted two unfilled positions.  Doc. #4 at ¶ 70.  The combined salary for the new positions equaled more than Bird's salary at the time of her termination.  Doc. #4 at ¶ 71.  Every person that was hired, promoted, or moved to Bird's department or role performed at least one job duty that was performed by Bird before her termination.  Exh. 18; Dep. or Ryan Hogan at p. 117, lines 1-4, lines 14-18, p. 161, p. 162, lines 1-7.

Defendant posted a new position in 2021 (Assistant Director of Admissions).  Bird applied for the position, was qualified for the position, interviewed for the position, but was not selected for the position.  Instead VSU hired an existing employee from Housing (Katrina Crumpton) who was less qualified.  Exh. 49, Dep. of Bird p. 17, lines 8-11; Dep. of Hogan, p. 168-171.

In sum, Carr repeatedly referred to the February 26, 2019 Dual Enrollment Counseling Email, the March 5, 2019 Reprimand, and Bird's opposition to his inappropriate hug, in making decisions related to Bird's future employment status, conditions, location, department, and whether she would be employed at all (in the RIF).  Carr communicated all of these issues he had with Bird to VSU's Human Resources Department, who then considered all of Carr's communications during the RIF decision-making process.  Defendant again referred to all of the above during the September 2020 Title IX investigation and in response to Bird's appeal to the Board of Regents.

CONCLUSION

There are multiple incidents of harassing and retaliating conduct from Carr both before, during, and after the RIF was in progress. Carr and Carvajal have a history of doing this, as agents of Defendant, dating back to their Bainbridge College years.

Prior to the pandemic, in early 2020, Plaintiff was transferred out of her department away from her team and other directors, and placed under a new supervisor (Freidhoff) who then received a raise. Carr repeatedly referred to Bird's discomfort with his inappropriate hug a year after it occurred in the context of a conversation about the conditions and status of Bird's employment. Whenever Bird asserted her rights to relief through a formal Title IX Complaint, Bird faced opposition from Carr who worked with HR who tampered with the independence of the Title IX investigation. When Bird attempted to obtain relief from the Board of Regents, Carr, in working with HR, again prevented the relief Bird sought. The RIF packet reviewed by HR, and considered by the president's cabinet was similarly tampered with by Carr, through HR, which contained a comprehensive regurgitation of all his prior unlawful actions against Bird. The RIF packet and decision to terminate Bird were all based on Carr's influence, specifically dating back to Bird's refusal to unite with Carr in the forced intimacy of a hug with Carr behind her desk alone in her office.

Bird does disclose a violation of a law, rule, or regulation in her February 26, 2019 Dual Enrollment Counseling Email by pointing out the pitfalls of the chronic non-compliance with the counseling requirement of the dual enrollment laws, rules, and regulations. However, this is not the only way to obtain liability under the GWA. In Defendant's Reprimand of Bird, Defendant also established a policy and practice of preventing Bird from disclosing such violations and from effectively doing her job in any successful or legally

compliant way.  Moreover, whenever Bird asserted her rights to relief through a formal Title IX Complaint, Bird faced opposition from Carr who worked with HR who tampered with the independence of the Title IX investigation (and the Reprimand was specifically discussed in the Title IX Investigation during Carr's interview).  When Bird attempted to obtain relief from the Board of Regents, Carr, in working with HR, again prevented the relief Bird sought.  The RIF packet reviewed by HR, and considered by the president's cabinet was similarly tampered with by Carr, through HR, which contained a comprehensive regurgitation of all his prior unlawful actions against Bird.  The RIF packet and decision to terminate Bird were all based on Carr's influence, specifically dating back to the February 26, 2019 Email and the March 5, 2019 Reprimand.

Therefore, Plaintiff's claims, for Title VII Gender and Retaliation Discrimination, and under the GWA, prevail over Defendant's motion.  The Court cannot grant summary judgment to Defendant because there exist obvious and genuine issues of dispute over the facts of the case.  The brief and citations to the record show inconsistent versions of the facts and Defendant misstates the legal conclusions that should be drawn.

WHEREFORE, Plaintiff requests that the Court DENY Defendant's Motion for Summary Judgment.

Respectfully submitted this 12th day of May, 2022.

LAWSON, BECK & SANDLIN, LLC
*/s/ Holly H. Maestas*
Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092

1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:    (770) 486-8949
Facsimile:     (770) 486-8950
Email: holly@lawsonandbeck.com