**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| JAMIE T. BIRD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File No. |
| v. | ) | |
| | ) | 7:21cv62 (WLS) |
| BOARD OF REGENTS OF THE | ) | |
| UNIVERSITY SYSTEM OF | ) | |
| GEORGIA d/b/a VALDOSTA | ) | |
| STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS TO WHICH THERE EXISTS A**
**GENUINE ISSUE TO BE TRIED**

COMES NOW the Plaintiff JAMIE T. BIRD, pursuant to Local rule 56, and files this *Plaintiff's Statement of Material Facts to Which There Exists a Genuine Issue to be Tried*, showing that while some of these facts are not disputed, however, they are not listed in *Defendant's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment* (Doc. #33-2).

1.

From 2016 through the time Bird was terminated in 2020, Bird was over Dual Enrollment admissions and registration at VSU and worked in the Office of Admissions.  Doc. #4 at ¶10, 11; Doc.#1-3.

2.

Mrs. Bird's duties also included overseeing the VSU Dual Enrollment Honors Academy. Doc. #4 at ¶ 13.

3.

Mrs. Bird reported to Mr. Render Terrell "Tee" Mitchell, Associate Vice President of Enrollment Services.  Doc. #4 at ¶15.

4.

Tee Mitchell reported directly to Dr. Rodney Carr.  Doc. #4 at ¶16.

5.

During his tenure at VSU, Dr. Rodney Carr has held the position of Vice President for Student Success and has been supervised by VSU President Dr. Richard Carvajal.  Exhibit 59.

6.

Rodney Carr worked at Bainbridge State College from September 2011 to the date of his hire at VSU in June 2017.  Exhibit 60.

7.

During Carr's tenure at Bainbridge State College, Carr was supervised by Richard Carvajal.  Exhibit 60.

8.

Richard A. Carvajal has been the president of VSU from January 2017 to the present.  Exhibit 60.

9.

Prior to serving as VSU's president, Richard A. Carvajal was the president of Bainbridge State College.  Exhibit 59.

10.

Dr. Rodney Carr was investigated for his "vulgar and sexually charge language," creation of a "hostile workplace," '"inappropriate behavior," including "physical contact with a female employee." Exhibit 47, 48.

11.

On March 30, 2013, Dr. Richard Carvajal, issued Dr. Carr a Written Reprimand for his "aggressive and unprofessional" behavior and incidents of "sexually charged language and cursing." Exhibit 47, 48.

12.

On October 28, 2013, Carvajal notes, in writing, that he "can't take that risk" [of promoting Carr to be Vice President of Academic Affairs at Bainbridge] College, Carvjal promotes Carr to be both the Vice President for Academic Affairs and Students Affairs at Bainbridge College.  Exhibit 47 pg. 4 (noting in appropriate, intimate conduct with female coworkers and that Carr will "never be successful as a president"); Deposition ("Dep.") of Michael Kirkland, pg. 76-77 (referring to Exhibits 47, 48 and Carr being considered for the role of VP of Academic Affairs).

13.

Michael Kirkland (former employee of Bainbridge College) noted that Carvajal and Carr are doing the same things at VSU to Bird that they did at Bainbridge College, to other women, years before.  Dep. of Michael Kirkland at pgs. 82-85.

14.

On the morning of February 20, 2019, Dr. Carr entered in to Mrs. Bird's office (while she was alone), closed her door, stated that he was going to do something that [he doesn't] normally

do in the office, entered in to the small space behind Mrs. Bird's desk near her chair before she could exit that area, placed his hand behind her neck, placed his hand on here lower back, and gave Mrs. Bird a tight full body hug behind her desk.  Dep. of Jamie Bird, pg. 57-59, pg. 88, lines 17-23.

15.

Mrs. Bird felt threatened and uncomfortable, immediately pushed Carr away, stepped beside him, stated that that she needed to open her door, came back to her desk, and stated that she had work to do.  Dep. of Jamie Bird, pg. 59-60; Dep. of Lisa Long, pg. 110.

16.

Carr responded to Mrs. Bird's pushing Carr away, distancing herself from him, and opening her door with anger:  his face became red, and he asked why she did that?  Dep. of Jamie Bird, pg. 59-60.

17.

Mrs. Bird immediately requested that Mr. Carr never be let back in her office alone again. Dep. of Jamie Bird, pg. 60.

18.

On or about January 22, 2020, Mr. Carr entered Mrs. Bird's office when she was alone again to discuss Bird's job restructuring, moving Bird's job to a different department, and her classification.  During this encounter Carr referenced Bird's discomfort from his February 20, 2019 hug condescendingly stating that Bird did not like hugs, did not like being touched, did not like her door being closed when he was in the office, and stated that Carr would only be able to give her an air-hug.  This time the door was open and the conversation was overheard by Ryan

Hogan and Lisa Long. Dep. of Ryan Hogan, pg. 134-135, pg. 174, lines 3-13, Dep. of Lisa Long, pg. 110-113; Exhibit 29, Exhibit 30.

19.

On or about January 22, 2020, when Carr was discussing Bird's job restructuring with Hogan (including moving Bird to a different department), Carr made reference to the March 5, 2019 Written Reprimand (" 'Did Tee leave any filed behind?' Specifically asking for if there was any files relating to any write-ups [on Bird].") Dep. of Ryan Hogan pg. 150-151.

20.

During September 2020 Title IX investigative interviews related to the February 20, 2019 hug encounter in Bird's office, the February 26, 2019 dual enrollment counseling email and March 5, 2019 Reprimand were referenced several times. Exhibits 27, 29, 30.

21.

VSU is an Eligible Postsecondary Institution and offers dual enrollment classes to high school students. Doc. #4 at ¶ 22.

22.

Dual Enrollment is offered through funding, laws, regulations, rules, and policies set by the Georgia General Assembly and its designees. Doc. #4 at ¶ 23.

23.

The law provides that, "No later than the first day of February each year, each eligible high school shall provide general information about the program, including such forms, to all its eligible high school students. An eligible high school shall also provide counseling services to such students and their parents or guardians before the students enroll in the program. Prior to participating in the program, the student and the student's parent or guardian shall sign the form

provided by the eligible high school or by an eligible postsecondary institution stating that they have received the counseling specified in this subsection and that they understand the responsibilities that shall be assumed in participating in the program."   O.C.G.A. § 20-2-161.3(d).

24.

Section 1604.3 of the 2018-2019 Dual Enrollment Programs Regulations provides that "1. A student must maintain Satisfactory Academic Progress (SAP), as defined and certified by his or her Eligible Postsecondary Institution;" and that "Eligible Postsecondary Institutions have sole discretion and responsibility for evaluation and approval of any such student appeals [for 'students with dual-enrollment credit hours that fail to meet the quantitative standards (pace) for degree completion . . .']."  Exhibit 58.

25.

Section 1605.1 number 5 of the 2018-2019 Dual Enrollment Programs Regulations provides, "Prior to participating in the Dual Enrollment Program, the student and the student's parent(s) or guardian shall sign an advisement form provided by the Eligible High School or Home Study program acknowledging complete understanding of the responsibilities assumed by the student while participating in the Dual Enrollment Program . . . ."  Exhibit 58.

26.

On February 26, 2019, Mrs. Bird sent an email to the high school counselors regarding academic "course rigor" foundations necessary for students to be "successful once they graduate [high school] and move forward into college;" "choosing the right institution to attend and not one that will just help students 'check off courses.'   This also helps students get the needed

academic foundation that will allow them to move forward successfully wherever they go after they graduate." Exhibit 41.

27.

This Dual Enrollment Counseling Email sought "to make sure students are being impacted in a positive way that will enhance their future education;" and advised that "it is critical for those students wanting to attend a 4-year institution after they graduate high school, get their credits from the same type institution." Exhibit 41.

28.

Associate Vice President for Student Success, who is over VSU Dual Enrollment, Rob Freidhoff, stated that he could not disagree with Bird's statement that "it is critical for those students wanting to attend a 4-year institution after they graduate high school, get their credits from the same type institution;" and that "there may be a school like Georgia [UGA] or Georgia Tech that that is the case." Dep. of Robert Freidhoff, pg. 10, lines 16-24; pg. 105 lines 10-25; pg. 106, lines 102; Exhibit 41.

29.

Ryan Hogan, VSU Director of Admissions, testified that he agreed with multiple statements made in Bird's February 26, 2019 Dual Enrollment Counseling Email. Dep. of Ryan Hogan pg. 16, lines 14-15; pg. 146 lines 21-25, pgs. 147-149 ("And this is a sort of an issue that [Bird] and I worked on often . . . . a student . . . test[s] well enough to get in to, let's say Okefenokee Tech [a TCSG] . . . [s]o they got admitted to Okefenokee Tech . . . . [but] when that student goes to apply to [VSU], they're not meeting the requirements . . . ."

30.

Annual Satisfactory Achievement Progress (SAP) report in 2020 showed a large number of dual enrollments students at VSU who were not achieving satisfactory academic performance which is required under the rules and regulations of the dual enrollment program. Exhibit 25.

31.

On February 27, 2019, in response to Bird's Dual Enrollment Counseling Email, Rodney Carr emailed a list of high school dual enrollment counselors emphasizing the importance of VSU's "collaborating", "partnering," "working together" and doing "joint counselor events" with the Technical College System of Georgia (TCSG). Exhibit 42. However, no witness from VSU was able to point to out one single partnership purpose, opportunity, incident, or event where VSU's Dual Enrollment program intersected with the TCSG's dual enrollment program. Dep. of Richard Carvajal at 166, lines 13-25, 167, lines 1-5. Dep. of Rodney Carr, pg. 146 (lines 23-25); pg. 139, lines 23-24; pg. 140, lines 2-3, lines 9-12, 19-20; pg. 140-141.

32.

On February 27, 2019, a high school counselor responded to Carr's email reminding Carr that "one of our biggest hurdles of getting our DE students directly in to the 4-year college coursework is the fact that they must meet the math requirement along with the Reading and Writing." Exhibit 42.

33.

On or about March 6, 2019, Dr. Carr requested Mrs. Bird and Mr. Mitchell come to his office to discuss Mrs. Bird's Dual Enrollment Counseling Email; both complied. Doc. #4 at ¶35.

34.

VSU issued Bird a written reprimand dated March 5, 2019, drafted by Carr, which Tee Mitchell was forced to sign, stating that Mrs. Bird's February 26, 2019 Dual Enrollment Counseling Email was considered by the TCSGs to be "offensive," had "a significant adverse impact on recently established relationships that will need to be repaired," and that "Mrs. Bird should prepare for . . . negative repercussions in regard to future relationships between her and HS counselors as well as [TCSGs]." Exhibit 43; Exhibit 61 (Affidavit of Render Terrell "Tee" Mitchell.) However, Carr was unable to name one single person who he knew who had considered Mrs. Bird's email offense; nor was Carr able to point out one single way in which VSU's dual enrollment program actually partners with the TCSGs. Dep. of Rodney Carr, pg. 146 (lines 23-25); pg. 139, lines 23-24; pg. 140, lines 2-3, lines 9-12, 19-20; pg. 140-141.

35.

In fact the only evidence that anyone considered Bird's February 26, 2019 Dual Enrollment Counseling Email offensive is testimony from Carvajal that Tina Anderson, the then-president of Wiregrass Georgia Technical College, was offended by it. However, Carvajal testified that VSU does not collaborate with Wiregrass or the TCSGs in any way and that Wiregrass specifically declined to partner with VSU because Wiregrass competes for the same dual enrollment students that VSU competes for. Carvajal further testified that after Carvajal was unsuccessful in carving out "niches" for VSU and Wiregrass (to avoid direct competition for the same students). Dep. of Richard Carvajal pg. 33, lines 107; pg. 39, pg. 40, lines 7-19. Carvajal testified that he never communicated with Wiregrass regarding VSU's dual enrollment until Tina Anderson called upset about Bird's email. Dep. of Richard Carvajal pg. 32, lines 13-

25; pg. 33 lines 1-14.  (Bird's email similarly counseled students on which might be their appropriate "niche" at a 4-year over a 2-year).

36.

This March 5, 2019, written reprimand prohibited Bird from counseling students on the "rigor of the curriculum" because it would be "considered offensive" that Technical Colleges were less effective than 4-year institutions in providing a good academic foundation.  Exhibit 43.

37.

This March 5, 2019, written reprimand prohibited Bird from counseling students in a way that could have any "repercussions from Technical Colleges."   Exhibit 43.

38.

This March 5, 2019, written reprimand was "noted on Ms. Bird's performance evaluation." Exhibit 43.

39.

This March 5, 2019, written reprimand was "placed in Ms. Bird's permanent personnel file in Human Resources."  Exhibit 43.

40.

This March 5, 2019, written reprimand threatened possible "further progressive discipline up to and including termination."  Exhibit 43.

41.

The Board of Regents of the University System of Georgia publishes official guidance for high school students to choose course with the appropriate academic rigor for their future college goals:  "Students should pursue a challenging and rigorous high school curriculum to be best prepared for a successful college experience and should consult with their high school

counselor to determine appropriate courses." "The USG's selective colleges and universities, such as the Georgia Institute of Technology and the University of Georgia, consider the context of the student's high school when reviewing a student high school curriculum." Exhibit 21, pg. 1, 5 (University System of Georgia Freshman Admission Requirements).

42.

VSU's Dual Enrollment Flipbook, available on its websites touts that "high school and home school student in VSU's Dual Enrollment Program benefit from the resources of a major state university, where they can easily transition from high school to college. The rigor and pace of our classes will prepare you for success anywhere." Exhibit 19.

43.

Rodney Carr's doctoral dissertation, Carr, Rodney B., "Identifying Best Practices for Student Success in Developmental Education in Georgia" (2012), acknowledges that "Two-year colleges have long enrolled students who are academically underprepared." Carr (2012). Exhibit 1, pg. 2. "Many students accepted in to two-year colleges are underprepared for the rigor of coursework at the high level." Carr (2012), Exhibit 1 at 28. Carr cites the "open-door admissions" policy of 2-year institutions throughout his dissertation. Carr (2012), Exhibit 1, pg. 28.

44.

Lisa Long, the Associate Director of VSU's Office of Admissions stated that "[t]here was nothing wrong with [Bird' Dual Enrollment Counseling Email]. I don't know why she was written up. For the audience she sent it to it was very informative, nothing negative, purely factual." Exhibit 29. Long further stated that she agreed with the statement in Bird's email that

there's a "level of preparedness that they get at four-year school versus a technical school." Dep. of Lisa Long at p. 133

45.

At the USG Dual Enrollment Summit 2019, where leaders of Dual Enrollment throughout the USG throughout the state met to discuss common problems and goals, several leaders stated the concerns about differing academic rigor between USG and TSCG institutions for Dual Enrollment. Exhibit 24; Dep. of Jamie Bird at pgs. 126-129.

46.

A Title IX investigation revealed that employees in the VSU's Office of Admissions believed Bird was "targeted with the RIF [Reduction in Force]," and that they fear retaliation for telling the truth about the retaliation and treatment of Bird. Exhibit 29.

47.

A Title IX investigation showed that Carr had spoken to Hogan and Freidhoff regarding his intent to target Bird and eliminate her position; and that Hogan and Freidhoff had stated their support for keeping Bird in Admissions, but that Carr refused this and went forward with his plan to eliminate Bird. Exhibit 30.

48.

The March 5, 2019 Reprimand scolded that Bird's February 26, 2019 Dual Enrollment Counseling Email "had a significant adverse impact on recently established relationships that will need to repaired;" and that "Ms. Bird should prepare for the possibility that there may be negative repercussions in regard to future relationships between her and HS Counselors as well as representatives from Technical Colleges for a period and maintain a consistent level of professionalism." However, despite multiple depositions of Defendant's agents specifically

assigned to Admissions and Dual Enrollment could point to no evidence of any damage to any relationship that affected VSU's dual enrollment or admission, nor could they point to any actual relationship between VSU's dual enrollment program and the Technical Colleges.  (Dep. of Rob Freidhoff pg. 16, lines 9-25 (no official involvement of VSU Dual Enrollment with TCSGs/Wiregrass other than Freidhoff's consulting their as a national instruction for Appreciative Advising), pg. 111-113(no evidence that anyone was offended by Bird's Email);(Dep. of Richard Carvajal, p. 160-161, lines 159-161 (no relationship between VSU dual enrollment students and Wiregrass), pg. 168, lines 21-25; pg. 166, lines 1-10); Dep. of Rodney Carr pg. 139, lines 15-25; pg. 140; pg. 141, lines 1-19 (no known reason to hold joint counseling events with TCSGs/Wiregrass for VSU Dual Enrollment students).  Furthermore, a counselor from Lowndes County High School, stated that "Ms. Bird's February 26, 2019 email did not adversely impact the relationship Lowndes County School District has, and continues to have with, Valdosta State University (VSU), regarding student participation in VSU's Dual Enrollment Program."  Plaintiff Exhibit 62.

49.

Additionally, a high school counselor from Valwood School supported Bird and stated that Bird "always [is] going above and beyond and never swaying one way or another (technical or 4-year) in helping them achieve their goals."   Exhibit 63.

50.

Tee Mitchell did not support Bird' reprimand and opposed any discipline to Bird for the Dual Enrollment Counseling Email.  Exhibit 61.

51.

Tee Mitchell resigned from his position at VSU in January 2020.  Doc. #4 at ¶ 45.

52.

On or about January 22, 2020, Dr. Carr appeared unannounced in Mrs. Bird's office. Doc. #4 at ¶49.

53.

This was the first time Dr. Carr had been in Mrs. Bird's office since the February 20, 2019 hug-against-the-corner-of-the-desk incident.  Doc. #4 at ¶50.

54.

A Title IX Investigation revealed that employees in the Office of Admissions were aware of Dr. Carr's mentioning to Bird something about a "hug" and being "touched."  Exhibits 29, 30.

55.

Mrs. Bird requested that Dr. Carr correct her job description and classification to reflect her actual job and duties.  Doc. #4 at ¶54.

56.

Carr responded and told Bird that her reporting structure was changing.  Doc. #4 at ¶57.

57.

On or about February 2, 2020 (months prior to the pandemic which allegedly led to Bird's RIF due to budget cuts), Carr moved Bird from the Office of Admissions to the Office of First Year Transitions.  Exhibit 44A.  Dep. of Richard Carvajal pg. 54-55 ("[W]e were first asked to [cut budgets for the pandemic] . . . somewhere around . . . May . . . 2020").

58.

On or about July 17, 2020, VSU notified Bird that she would be terminated due "business necessity by department and job category" in a "reduction in force."  Doc. #4 at ¶ 67; Exhibit 8.

59.

It is the Defendant's policy to take in to account performance evaluations, discipline, and other adverse employment actions in deciding which employees will be terminated in a Reduction in Force (RIF),    Exhibit 7.

60.

In September 2020, Carr received a salary increase of in the amount of $28,112/year. Exhibit 15.

61.

In January 2020, Rodney Carr promoted Rob Freidhoff and gave him a salary increase of $10,383/year.  Exhibit 16.

62.

Freidhoff was less qualified than Bird.  Dep. of Rob Freidhoff, p. 113, lines 22-25.

63.

In 2020 and 2021 six new positions were posted in the Office of Admissions named "Admissions Recruiters."  Exhibit 14.

64.

VSU's Human Resources Director reports that Bird's job duties were reassigned to the local [Admissions] recruiters.  Exhibit 46 at Page 6 #3.

65.

It is undisputed that at the time Bird received notice of her termination, the Admissions Office had posted two unfilled positions.  Doc. #4 at ¶ 70.

66.

The combined salary for the new positions equaled more than Bird's salary at the time of her termination. Doc. #4 at ¶ 71.

67.

President Carvajal testified in looking to make budget cuts for the pandemic in May 2020, that he directed his cabinet (which included Carr) to look to "hold . . . back" or "not hire" "unfilled positions" before eliminating any existing personnel. Dep. of Richard Carvajal pg. 57, lines 20-25; pg. 60, lines 7-10, 25; pg. 61, lines 1-6; pg. 64, lines 18-25; pg. 65, lines 1-15.

68.

Defendant posted a new position in 2021 (Assistant Director of Admissions). Bird applied for the position, was qualified for the position, interviewed for the position, but was not selected for the position. Instead VSU hired an existing employee from Housing (Katrina Crumpton) who was less qualified. Exhibit 49, Dep. of Jamie Bird p. 17, lines 8-11; Dep. of Ryan Hogan, p. 168-171.

69.

Every person that was hired, promoted, or moved to Bird's department or role performed at least one job duty that was performed by Bird before her termination. Exhibit 18, Dep. or Ryan Hogan at p. 117, lines 1-4, lines 14-18.

70.

Defendant's own policies permit it to rely on "documented performance," "annual Performance Evaluation[s]", "disciplinary action," "job performance," and "personal conduct" in RIFs. Exhibit 7.

71.

On March 13, 2019, in Bird's Annual Review.  Carr referred Bird's February 19, 2019 Dual Enrollment Counseling Email and to her March 5, 2019 Reprimand, "[Bird] will focus on strengthening relations with TCSG officials, which in turn should negate any negative repercussions in regard to partnerships with Technical Colleges and HS Counselors."  Exhibit 46 at 24.

72.

In August, September, and October 2020, Defendant referenced Bird's asserting discomfort about Carr's inappropriate February 20, 2019 hug; referenced Bird's February 26, 2019 Dual Enrollment Counseling Email; and referenced Bird's March 5, 2019 Reprimand. Exhibits 27-31; 46.

73.

In October 2020, Boddie-LaVan tampered with independent investigation of Bird's Title IX complaint against Carr by repeatedly emailing Title IX Investigator Janice Lyn and directing her to make edits to Lyn's investigative report.  Exhibits 34-40B.

74.

Multiple witnesses stated that they feared retaliation from Defendant (especially Carr) if they participated in the Title IX investigation.  Exhibit 29, 30.

75.

Carr communicated multiple alleged performance issues he had with Bird to VSU's Human Resources Department, all of which are pretext and can be disproven.  Exhibit 46 (HR Director Boddie-LaVan's August 24, 2020 letter specifically references the hug, the March 5, 2019 Reprimand, the overall retention rates for VSU Dual Enrollment students allegedly

decreasing over the last five years, attaching Bird's March 13, 2019 Annual Review (which referenced the February 26, 2019 email and March 5, 2019 Reprimand).

76.

Michelle Jordan met with Carr and provided Boddie-LaVan with Carr's version of Bird's performance in the retention of dual enrollment students.   Dep. of Jeanine Boddie-LaVan pg. 79, lines 9-18.

77.

In Fall 2019, VSU's Dual Enrollment retention outranked all of the other institutions in the USG except four (4) in retention of dual enrollment students retained as first-time-freshmen in their dual enrollment institution.  Exhibit 56 at 32.  Furthermore, Bird's March 13, 2019 Annual Review noted that Bird's "DE goal was fairly aggressive at 20%.  [Bird] exceeded the DE goal with an increase of 30% for the Fall 18 term. . . . .  The DE program has increased by 363% since Fall 15.  This was accomplished in part by reaching out to all of the local high schools and strengthening relationships with HS counselors and administrators."  Exhibit 46 at pg. 24-25.

78.

VSU's Human Resources Department considered all of Carr's communications during the RIF decision-making process; and Boddie-LaVan specifically states that she considered the "RIF packet" in writing Exhibit 46.    Dep. of Jeanine Boddie-LaVan pg. 78, lines 3-15 (HR employee Michelle Jordan documented multiple conversations with Carr which led to Bird's termination.)

79.

HR's system level response letter contains outright contradictions of testimony, including the statement that "Dr. Carr's behavior of not meeting with women behind a closed door has been previously established by HR in writing;" and that "Carr . . . stated that Dr. Carr's practice when meeting with employees or students of the opposite gender is to have his administrative assistant . . . to sit in on the meeting." Exhibit 46 at 1, 7. The statement is *per se* untrue as documented by Bird's, Carr's, Hogan's, and Long's testimony that Carr, on more than one incident met with Bird, alone in Bird's office. Knowing the this false-politically-correct supposed policy of Carr's is bogus, VSU used it against another female employee, this time an "African American," to find that her complaint for race discrimination was unfounded, which forced her to resign. Dep. of Boddie-LaVan, p. 27-31.

80.

Carr knowingly met with Bird in her office alone on three (3) occasions. First, with the February 20, 2019 intimate hug; second, in the January 22, 2020 you-don't-like-being touched/air hug encounter; and third, on February 3, 2020 when Carr knew Bird was alone in her office. Exhibit 64 (After Carr saw Lisa Long (the only person whose office was close to Bird's office) with Christy Croft at the VSU Bookstore (Exhibit 64 at 27:25-28:00), Carr went to Bird's office to discuss her job duties, structuring, reporting, and classification).

Respectfully submitted this 12th day of May, 2022.


LAWSON, BECK & SANDLIN, LLC

*/s/ Holly H. Maestas*
Holly Hance Maestas
Attorney for Plaintiff
Georgia State Bar No. 153092


1125 Commerce Drive, Suite 300
Peachtree City, Georgia 30269
Telephone:     (770) 486-8949
Facsimile:     (770) 486-8950
Email: holly@lawsonandbeck.com