REDUCTION IN FORCE – FREQUENTLY ASKED QUESTIONS

# University System of Georgia
# Reduction in Force
# FAQ's

KAIRISA J. MAGEE, RPR, GCCR
2/21/2022
PLAINTIFF'S EXHIBIT
**L. LONG -7**

**1. What are the reasons for a reduction in force (RIF)?**

A reduction in staffing may be necessary due to a lack of funding, a lack of work to be performed, or other organizational changes such as the elimination of certain programs or services.

**2. How does a department determine which positions to RIF?**

Positions are selected based on the functional needs of the department. An evaluation is done of the need for specific programs, services, and positions. Once critical functions are identified, employees are considered based on knowledge, skills, and abilities to perform the needed tasks.

**3. Are there any alternatives to a RIF?**

Departments are strongly encouraged to consider other alternatives before separating employees through a RIF. This includes strategies such as closing vacant positions furloughs, and restructuring. However, these strategies are not always successful in meetings significant institutional challenges.

**4. If there are several employees performing the same function, how does the department decide which employee to separate?**

When multiple positions exist within the department with the same classification but only a subset of those positions has been identified for the RIF, factors such as competencies, skills, documented *performance, and all other factors equal – length of service of employees in affected positions are considered.* The reduction in force process should not be used to circumvent policies on demotion, suspension or dismissal.

When considering performance, the primary component for determining the performance of employees should be the most recent two (2) annual Performance Evaluation ratings, unless the employee has been employed for one (1) year or less in which case there would only be one (1) annual Performance Evaluation available. Other components of determining performance are: active disciplinary action for either job performance or personal conduct; documented performance difficulties communicated to the employee, but not rising to the level of disciplinary action; or any other documented indicators of poor performance. All other factors equal, length of service should be considered.

**5. Is Affirmative Action considered in the RIF decision?**

Yes. All plans for reduction in force are reviewed to avoid adverse impact.



PLAINTIFF'S
EXHIBIT
7

**6. Who approves the department's plan to RIF employees?**

The university's President (or designee) approves the plan in consultation with institutional management team, human resources and as applicable, legal affairs either on campus or at the BOR.

**7. How much notice are employees provided prior to separation?**

Employees who will be impacted by a RIF should be engaged as soon as reasonably possible and whenever possible, the employee should be given at least sixty (60) preferably ninety (90) days, prior notice before the reduction in force occurs.

**8. Can a permanent employee be separated and a temporary employee hired to perform the same function?**

Temporary employees can be hired to assist with performing some or all of the duties of separated employees for brief periods of time. Temporary employees should not be hired to assume the duties of a permanent fulltime employee on a continuous basis.

**9. What type of assistance does Human Resources provide?**

Human Resources will provide transition services that may include resume and interview skills development, job searching techniques, benefits continuation options and other employment resources.

**10. What is the employee's responsibility in locating other employment?**

It is the employee's responsibility to find employment; however campus human resources offices, career centers and/or employee assistance programs (where applicable) will be available to provide support.

**11. Can employees request a review of the RIF decision?**

In accordance with Policy 8.6 Applications for Discretionary Review, employees may submit a written application for review to the Office of Legal Affairs of the Board of Regents.

An application may be considered for review if (1) the record suggests that a miscarriage of justice might reasonably occur if the application is not reviewed, or (2) the record suggests that the institutional decision, if not reviewed, might reasonably have detrimental and system-wide significance.

All request must be submitted within 20 calendar days of the date of the RIF notification to the following address: Office of Legal Affairs, Board of Regents of the University System of Georgia, 270 Washington Street, SW, Atlanta, GA 30334.

## BENEFITS

**12. What happens to leave balances when employees are separated?**

Annual leave up to 360 hours is paid out. The vacation pay out is completed at the time of the employee's last paycheck. Vacation pay outs are subject to 25% tax withholding. Sick leave is not paid out. Employees may request certification of final sick leave balances.

**13. What happens to employee compensatory time balances?**

If the employee is non-exempt their compensatory balance will be paid out. Exempt employees are not eligible for compensatory time under Board of Regents policy.

**14. What happens to employees benefits and leave if an employees is re hired at the current institution or another university system of Georgia institution?**

If the termination and subsequent hiring at the same institution occurs with less than thirty (30) days between the actions, this is not considered a break in service. Benefits and leave accrual remain active.

In The movement of an employee from a position at one institution within the University System to a position at another institution within the University System is considered an external transfer. In the event of an external transfer to another USG institution, accumulated sick leave, retirement benefits and service continuity will be transferred if the break in service does not exceed thirty (30) calendar days and as outlined in the HRAP Transfer policy.

If the hiring occurs more than thirty (30) days between either actions, this is considered a break in service. Benefits and leave accrual begin on the new hire date

The transferring employee will restart the provisional period at the new location effective on the first day of employment and serve his/her first six (6) months in a provisional status, subject to all terms and conditions of the provisional period policy.

**15. Am I eligible for unemployment benefits? How do I apply for benefits?**

You may be eligible for unemployment benefits if you are separated due to reduction in force. Contact your local Georgia Department of Labor (DOL) for details on eligibility and how to apply for unemployment benefits. The DOL also provides assistance in job searches and retraining options as well.

16. **What happens to my health benefits if I am not reemployed in another position or within the University System of Georgia?**

    Employees have options to continue their health and dental coverage for a limited time through the Consolidated Omnibus Budget Reconciliation Act (COBRA). Human resources will meet with the employee to review the specific options for that employee's benefits package.

17. **What happens to my retirement if I am separated as a result of a RIF?**

    Employees should meet with their human resources representatives and retirement system staff to review their options under the Teachers Retirement System of Georgia, the Optional Retirement Plan, Employee Retirement System and all other supplemental retirement plans.